UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA DENHOF and
RENEE LECLEAR,

   Plaintiffs,

v

(Chief) HARRY P. DOLAN,
(Lt.) DANIEL MILLS,
(Capt.) PAMELA CARRIER,
(Lt.) REBECCA WHITMAN,
(Lt.) CAROL PRICE, and
(Sgt.) CHARLOTTE MASON,
KURT KIMBALL,
individually and in their official capacities,
GLEN PETERSON, Ph.D., in his individual
capacity, d/b/a MICHIGAN LAW
ENFORCEMENT CONSULTANTS, and
THE CITY OF GRAND RAPIDS,

   Defendants.
_____/

Case No. 1:02-cv-275

Hon. Wendell A. Miles

## OPINION AND ORDER ON DEFENDANT DR. PETERSON'S MOTION FOR SUMMARY JUDGMENT

   In this action, plaintiffs Patricia Denhof and Renee LeClear assert a number of claims against various defendants arising from their removal from active duty as police officers for defendant the City of Grand Rapids ("the City"). The plaintiffs allege that their removal from duty was in retaliation for their participation with other female officers in a lawsuit alleging sex discrimination within the City's police department. In their most recent amended pleading, plaintiffs have asserted a total of six "counts" against the numerous defendants, which include federal claims under 42 U.S.C. § 1983 alleging violation of plaintiffs' First Amendment rights

(Counts I and II) and violation of Title VII of the Civil Rights Act (as amended) (Count IV), and a number of state law claims, including violation of Michigan's Elliott-Larsen Civil Rights Act (Count V), intentional infliction of emotional distress (Count III), and tortious interference with contractual relations (Count VI). Counts IV and V have been dismissed as to defendant Glen Peterson, Ph.D. ("Dr. Peterson"). In addition, all remaining claims against Dr. Peterson asserted by plaintiff LeClear have been dismissed pursuant to a stipulation of the parties.

The matter is currently before the court on Dr. Peterson's Motion for Summary Judgment (docket no. 294) on all of *pro se* plaintiff Patricia Denhof's remaining claims against him. Plaintiff Denhof has filed a response opposing the motion.

For the reasons to follow, the court grants the motion.

## DISCUSSION

Plaintiff Denhof's claims against Dr. Peterson arise from his performance of a "fitness for duty" evaluation of plaintiff at the request of the City's police department. Denhof has alleged that Dr. Peterson, a "police psychologist," was hired by the City to conduct an evaluation of her fitness for duty as a police officer only after she testified in a sex discrimination lawsuit filed by a number of female police officers against the City. According to plaintiff, Dr. Peterson's unfavorable evaluation caused her to be removed from active duty as a police officer.

Dr. Peterson owns and operates Michigan Law Enforcement Consultants. Dr. Peterson is not and has never been employed by the City's police department. However, Dr. Peterson has, as an outside third-party service provider, performed fitness for duty examinations of City police officers on a case-by-case basis at the request of the City's police department. Dr. Peterson bills

2

the City for these services.

Dr. Peterson does not dispute that in January, 2002, at the request of the City's police department, he performed a fitness for duty examination of plaintiff Denhof. Dr. Peterson likewise does not dispute that as a result of his examination, he concluded that plaintiff Denhof was not fit for duty, resulting in her being placed on administrative leave. However, Dr. Peterson disputes whether these actions make him liable to plaintiff Denhof on the remaining claims against him.

## Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and may satisfy this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." Anderson, 477 U.S. at 248.

## 42 U.S.C. § 1983

In his motion, Dr. Peterson argues, among other things, that he is entitled to summary judgment in his favor on plaintiff Denhof's claim against him based on violation of 42 U.S.C. § 1983 because he is not a "state actor" for purposes of the statute. The court agrees.

To state a claim for relief in an action brought under § 1983, a plaintiff must establish both that she was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of state law. E.g., American Mfrs. Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S.Ct. 977, 985 (1999). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful[.]'" Id. (citation omitted). The state action element "requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" Id. (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744 (1982)). If the allegedly unconstitutional conduct is not "fairly attributable to the State[,]" 526 U.S. at 50, 119 S.Ct. at 985, the defendant is not liable under the statute.

Denhof's claim here is that Dr. Peterson deliberately "distorted" his evaluation of plaintiff as part of his participation in a City plan to remove her from duty.  Even assuming that Dr. Peterson's conclusions were seriously flawed, the question is whether a private psychologist's rendering of an opinion on a police officer's fitness for duty may be fairly attributable to the State so as to subject the psychologist to the constitutional constraints of the First Amendment. Though there may be situations where the actions of a private actor could be deemed to amount to state action, see West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250 (1988), this is not one of them. See Collyer v. Darling, 98 F.3d 211, 231-233 (6th Cir. 1996) (psychiatrists with whom State of Ohio contracted to perform examination to determine whether plaintiff was fit for duty as therapeutic program worker were not state actors who could be sued under § 1983).  Because plaintiff Denhof is alleging that Dr. Peterson cooperated with or participated in concerted action with City officials as part of a "civil conspiracy," the traditional tests for determining whether private conduct is attributable to the state do not apply.  Memphis, Tenn. Area Local, Amer. Postal Workers Union, AFL-CIO v. City of Memphis, 361 F.3d 898, 905 (6th Cir. 2004).

Plaintiff Denhof is pursuing her § 1983 claim against Dr. Peterson under a civil conspiracy theory.  A private person may be considered a proper defendant under § 1983 if the individual has engaged in a conspiracy or willfully engaged in joint activity with one or more parties who are state actors.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 1605 (1970); see also Memphis, Tenn. Postal Workers Union, 361 F.3d at 905 (citations omitted).  The standard for proving a civil conspiracy is as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must

>be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

Id. (quoting Hooks v. Hooks, 771 F.2d 935, 943-944 (6th Cir.1985)).

Application of this standard to the evidence in this case leads to only one conclusion: that no reasonable factfinder could find that a conspiracy existed between Dr. Peterson and the City defendants. Plaintiff Denhof's "evidence" consists of no more than speculation and conjecture, based on what she contends are "irregular procedures" by which she was referred for a fitness for duty evaluation, and meetings or discussions between Dr. Peterson and City defendants regarding the evaluation. However, plaintiff herself acknowledges that City officials might have given Dr. Peterson incomplete or inaccurate information before he evaluated her, and the evidence does show that Dr. Peterson did ask for additional information. Plaintiff also acknowledges that Dr. Peterson was not even initially planning on performing the evaluation himself; he had at one point suggested to City officials that another practitioner – a Dr. Laura Forsburg – be the one to perform the evaluation, even though Dr. Peterson himself had in the past performed this service. Although such evidence might support a theory that state actors used Dr. Peterson to support some purpose of their own, it does not implicate Dr. Peterson as a knowing participant in their plan. Mere speculation and conjecture that an agreement existed between Dr. Peterson and City officials to deprive plaintiff Denhof of her rights does not support a finding of a civil conspiracy. Moore v. City of Paducah, 890 F.2d 831, 834 (6th Cir. 1989). The evidence simply fails to support plaintiff Denhof's claim that Dr. Peterson participated in a civil conspiracy with the City defendants, and he is therefore entitled to summary judgment in his favor on the claim against him under § 1983.

### State Law Claims: Intentional Infliction of Emotional Distress and Tortious Interference with Contractual Relations

Dr. Peterson also seeks summary judgment on plaintiff Denhof's state law claims of intentional infliction of emotional distress and tortious interference with contractual relations.

In Michigan, the tort of intentional infliction of emotional distress requires proof of the following elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. Roberts v. Auto-Owners Ins. Co., 422 Mich. 594, 374 N.W.2d 905, 908 (1985).[1] Dr. Peterson argues that plaintiff Denhof's claim against him fails because, among other reasons, plaintiff Denhof has not presented any evidence that supports a conclusion that he intentionally falsified his evaluation for the purpose of inflicting emotional distress on her. The court agrees. The facts, even when viewed in the light most favorable to plaintiff Denhof, may support a conclusion that Dr. Peterson made errors in performing his evaluation. However, the evidence is insufficient as a matter of law to support a reasonable finding that Dr. Peterson acted with the requisite intent or recklessness. Under the circumstances, Dr. Peterson is entitled to summary judgment in his favor on plaintiff Denhof's

---

[1] As has been often noted, Michigan's Supreme Court has not officially recognized the tort of intentional infliction of emotional distress. See, e.g., Smith v. Calvary Christian Church, 462 Mich. 679, 614 N.W.2d 590, 593 n.7 (2000). Nonetheless, there appears to be general agreement on what the required elements would be if such an action were to be recognized by Michigan's highest court.

claim for intentional infliction of emotional distress.[2]

Plaintiff Denhof's claim against Dr. Peterson for tortious interference with contractual relations also fails. The elements of this tort under Michigan law are (1) a contract; (2) breach; and (3) instigation of the breach without justification by the defendant. Wood v. Herndon and Herndon Investigations, Inc., 186 Mich. App. 495, 465 N.W.2d 5, 8 (1991). As Dr. Peterson has noted, there is no evidence that anything he did was intended to cause a "breach" of plaintiff Denhof's employment "contract" with the City of Grand Rapids (assuming that she had a contract and that it was in fact breached by the City). Moreover, given plaintiff Denhof's own allegations that it was the City defendants who initiated the process of referring her for a fitness for duty evaluation (with the intent of retaliating against her for her participation in the earlier lawsuit), plaintiff's own version of the facts at best suggests that although Dr. Peterson might have provided City officials with support for their decision to remove her from duty, Dr. Peterson did not "instigate" the process; according to plaintiff Denhof, the City defendants already wanted to get rid of her anyway. Under the circumstances, Dr. Peterson is entitled to summary judgment in his favor on plaintiff Denhof's claim of tortious interference with contractual relations.[3]

---

[2]Even if plaintiff Denhof were able to point to evidence of intent, she also faces the hurdle that the conduct must be "extreme and outrageous," an issue which is initially a question of law for the court. Sawabini v. Desenberg, 143 Mich. App. 373, 372 N.W.2d 559, 565 (1985). Dr. Peterson's written evaluation of plaintiff Denhof, even if intentionally false or defamatory, does not meet this threshold standard. See id. (circulation of allegedly defamatory letter insufficient to state claim of intentional infliction of emotional distress).

[3]The court has some concern that the state law tort claims against Dr. Peterson are an attempt to do an end-run around Michigan's malpractice action pre-filing requirements. In Dyer v. Trachtman, 470 Mich. 45, 679 N.W.2d 311, 317 (2004), Michigan's Supreme Court recently held that a claim of injury based on an independent medical examination properly fits within a medical malpractice cause of action. Under Michigan substantive law, a malpractice action

(continued...)

**CONCLUSION**

For the foregoing reasons, the court grants Dr. Peterson's motion for summary judgment. All remaining claims in this lawsuit against him are therefore dismissed in their entirety.

So ordered this 15th day of September, 2004.

                                               /s/ Wendell A. Miles
                                              Wendell A. Miles
                                              Senior U.S. District Judge

---

$^3$(...continued)
against a health professional is subject to dismissal for failure to provide either a notice of intent to sue or an affidavit of merit, as required by M.C.L. §§ 600.2912b(1) and 600.2912d(1). Dorris v. Detroit Osteopathic Hosp., 460 Mich. 26, 594 N.W.2d 455, 466 (1999). In addition, Michigan law considers psychologists to be "licensed health care professionals" for purposes of malpractice actions. See M.C.L. § 600.5838a(1)(b); see also M.C.L. §333.18201. However, because plaintiff Denhof's state law claims against Dr. Peterson are deficient in any event, this is probably a moot point.

9